[No. B220639. Second Dist., Div. One. Apr. 15, 2011.]

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP, Plaintiff and Respondent, v.
GEORGE GOFF et al., Defendants and Appellants.

427

COUNSEL

Terran T. Steinhart for Defendants and Appellants.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Vincent S. Green for Plaintiff and Respondent.

OPINION

**ROTHSCHILD, Acting P. J.**—George and Esther Goff appeal from a judgment confirming an arbitration award in favor of the law firm Glaser, Weil, Fink, Jacobs & Shapiro, LLP[1] (the Firm), which previously represented the Goffs. The parties submitted a fee dispute to arbitration. The arbitrators issued an award for the Firm in the amount of $654,658.28 plus interest. The Goffs contend that the trial court should have vacated the award because the arbitrators exceeded their powers by ruling that the arbitration was binding. We agree and therefore reverse.

---

[1] The firm was formerly known as Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP, and prior to that it was formerly known as Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP.

## BACKGROUND

### I. Procedural Summary

On March 25, 2009, the Goffs and the Firm participated in a fee arbitration pursuant to the Mandatory Fee Arbitration Act (Bus. & Prof. Code, § 6200 et seq.; MFAA) under the rules of the Los Angeles County Bar Association (LACBA) and its in-house arbitration services provider, Dispute Resolution Services, Inc. (DRS). On June 22, 2009, after concluding the parties had agreed to binding arbitration, the panel of three arbitrators issued an award in favor of the Firm in the amount of $654,658.28 in fees and costs, plus 10 percent simple interest from February 10, 2007, through the date of the award.

In July 2009, the Firm filed a petition and motion to confirm the award. The Goffs opposed the petition and motion, arguing that the arbitrators exceeded their powers by purporting to issue a binding award although the Goffs had not agreed to binding arbitration. They sought to have the award vacated and declared nonbinding, and they requested 30 days in which to file a rejection of the award and a request for trial de novo.

After conducting three hearings, the court granted the Firm's petition and entered judgment confirming the award in the amount of $838,068.98, including interest.

### II. The Fee Arbitration

The Goffs operate an art gallery, and they retained the Firm to represent them in a dispute with an artist concerning royalties. On September 25, 2007, the Firm sent the Goffs a letter advising them that they owed the Firm $654,658.28 in unpaid fees and costs on account of invoices from the Firm dated October 4, 2005, through January 5, 2007. The Firm advised the Goffs it would be filing an action in the Los Angeles County Superior Court to collect the fees and costs owed, and that the Goffs had the right under the MFAA to submit the matter to arbitration through LACBA.

On January 8, 2008, the Goffs submitted a request for binding arbitration of the fee dispute to LACBA's arbitration services provider, DRS.

On April 3, 2008, the Firm advised DRS that it declined binding arbitration.

DRS then sent a letter to the parties, advising them that an arbitration panel was appointed consisting of Timothy D. Reuben, Verna L. Porter, and

Bernard L. Krasnow, with Reuben as chairman. The letter indicated that the Firm had declined binding arbitration, and it advised the parties that if they agreed to binding arbitration before the start of the arbitration, then the arbitration would become binding.

On July 16, 2008, Reuben sent a letter to the parties proposing dates for the arbitration and asking whether the Firm would agree to binding arbitration.

On July 31, 2008, after having learned the identities of the arbitrators, the Firm advised Reuben it would agree to binding arbitration.

On August 8, 2008, Reuben again wrote to the parties, stating that "both sides have now agreed to have this matter heard as a binding arbitration." Reuben nonetheless asked that the parties sign and return a "Stipulation for Binding Arbitration." Counsel for the Firm signed the stipulation on the Firm's behalf on August 15, 2008, and one of the Firm's partners signed it on August 18, 2008.

On September 30, 2008, the Goffs advised Reuben that they would not agree to binding arbitration.

On December 5, 2008, the Firm asked the arbitrators to resolve the issue of whether the arbitration was binding as soon as possible, because the arbitration was scheduled to commence on January 9, 2009.

On December 11, 2008, Reuben ruled that the Goffs' original request for binding arbitration constituted an offer that was accepted by the Firm. Reuben reasoned that the Firm had not indicated a willingness to withdraw its request for binding arbitration, and the Goffs had requested binding arbitration in their initial papers.

The arbitrators heard the substance of the parties' fee dispute on March 25, 2009. There was no reporter present for the arbitration hearing.

On June 22, 2009, the arbitrators issued their award in favor of the Firm. The arbitrators found that the Firm generated a total bill of $1,187,362.43 in fees and costs in connection with the Goffs' dispute with the artist, and that the Goffs did not dispute that they owed the Firm fees, the amount of time billed, or the Firm's billing rates. The arbitrators found that under the several fee agreements between the Goffs and the Firm, the Firm was entitled to all fees sought and awarded $654,658.28 in fees plus 10 percent simple interest from February 10, 2007, through the date of the award.

The award expressly reiterated the arbitrators' prior ruling that the award was binding because the parties had agreed in writing to be bound: "This matter is subject to binding arbitration. The Goffs agreed to binding arbitration in their initial submission to the [LACBA] Dispute Resolution Services. The Firm indicated non-binding arbitration in its initial submission, but then changed its position to elect binding arbitration in agreement with the Goffs. After the Goffs saw that the Firm had also agreed to elect binding arbitration, the Goffs requested that their binding arbitration election be withdrawn. The Firm objected. A determination was made on December 11, 2008, ruling that the original election by the Goffs of binding arbitration was an offer that was accepted by the Firm and could not be revoked once accepted."

The award was accompanied by a form from LACBA entitled "Notice of Your Rights After Fee Arbitration," advising the Goffs that after service of a nonbinding arbitration award they had 30 days to seek a new trial in court, and after service of a binding arbitration award they had 100 days to file a petition to vacate or correct the award.

### III. The Petition to Confirm the Award

On July 13, 2009, the Firm filed a petition to confirm the arbitrators' award. The petition stated that the parties had agreed in writing prior to the arbitration that the award would be binding. On July 17, 2009, the Firm filed a motion to confirm the arbitration award pursuant to Code of Civil Procedure section 1285 and for entry of judgment thereon.

On August 18, 2009, the Goffs filed opposition to the Firm's petition and motion, contending that the arbitrators exceeded their powers by ruling that the arbitration was binding. The Goffs argued that the Firm's rejection of their offer of binding arbitration terminated the offer, which the Firm therefore could not accept later when it changed its position; accordingly, the parties never agreed to binding arbitration. In their opposition, the Goffs asked that the award be "vacated as a binding arbitration [a]ward" and also asked that, once the award was "declared to be non-binding," they be granted 30 days in which to request trial de novo.

In reply, the Firm defended the arbitrators' ruling on bindingness and also argued that the Goffs had waived the issue as follows: According to the declaration of Vincent Green (an attorney who had appeared on behalf of the Firm at the arbitration hearing), at the start of the arbitration hearing the Firm sought a continuance because it had recently become aware that the Goffs were not only opposing the Firm's efforts to collect unpaid fees but also "seeking a refund of fees previously paid," as well as "asserting a claim for legal malpractice." According to Green, as a result of the Firm's request for a

continuance, the arbitrators asked the Goffs if they would agree to a continuance in exchange for making the arbitration nonbinding, and the Goffs declined.

The Goffs filed evidentiary objections to Green's declaration and also filed a declaration by George Goff, stating that Green's declaration was incorrect on several points. In particular, George Goff's declaration states that at the arbitration hearing the arbitrators did not ask the Goffs if they would agree to a continuance in exchange for making the arbitration nonbinding, and that the Goffs "did not state" that they "were opposed to the arbitration proceeding as non-binding."

At a hearing on September 3, 2009, the trial court stated that it was tentatively inclined to grant the Firm's petition to confirm the award, but the court wished to conduct an evidentiary hearing concerning the conflict between the Green and Goff declarations.

The court conducted that evidentiary hearing on September 22, 2009. Green testified that, at the start of the arbitration hearing, the arbitrators asked the Goffs if they would agree to a continuance in exchange for making the arbitration nonbinding ("sort of as a trade-off to this no delay versus is this going to be a binding proceeding"). According to Green, the Goffs left the hearing room, returned about five minutes later, and rejected the arbitrators' offer. George Goff testified that the arbitrators did not offer to make the arbitration nonbinding, that the Goffs never left the hearing room to consider the question of a continuance, and that they did not unequivocally refuse to agree to the Firm's request for a continuance but merely stated that it would be a hardship for them to have to return for a second hearing date. Esther Goff testified that her recollection was the same as her husband's.

After receiving further supplemental briefing, the court heard additional argument and rendered its decision at a hearing on October 2, 2009. The court expressly found Green more credible than the Goffs and accordingly found that at the start of the arbitration hearing the arbitrators made, and the Goffs rejected, the offer described by Green. The court concluded that the Goffs' rejection of that offer precluded the Goffs from now arguing that the arbitration award was nonbinding. The court also reasoned that, assuming for the sake of argument that the arbitration award was nonbinding when it was made, the Goffs' failure to request trial de novo within 30 days of service of the award rendered the award binding pursuant to LACBA's rules.

The court entered both an order granting the Firm's petition to confirm the award and a judgment to the same effect on November 3, 2009. The Goffs timely appealed.

## STANDARD OF REVIEW

We review de novo the trial court's order confirming the arbitration award. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994].)

## DISCUSSION

We begin by addressing the Goffs' contention that the arbitrators' ruling that the arbitration was binding is subject to independent judicial review, and we conclude that the contention is correct. We next turn to the Goffs' argument that the arbitrators' ruling on that issue was legally erroneous, and again we agree with the Goffs—the parties did not agree to binding arbitration. Finally, we analyze several waiver and forfeiture arguments raised by the Firm and the dissent, and we conclude that they lack merit.

### I. The Arbitrators' Ruling That the Arbitration Was Binding Is Subject to Independent Judicial Review

The threshold question presented in this appeal is whether the arbitrators' ruling that the arbitration was binding is judicially reviewable at all. The Goffs argue that under *Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183 [117 Cal.Rptr.2d 842] (*Trabuco*), the ruling is subject to independent judicial review. We agree.

In *Trabuco*, two homeowners and their homeowners association "agreed in correspondence to submit" certain disputes "to nonbinding arbitration." (*Trabuco, supra,* 96 Cal.App.4th at p. 1186.) The arbitrator, however, issued a " 'Binding Arbitration Award and Decision.' " (*Ibid.*) After one of the homeowners asserted that "the arbitrator had mistakenly characterized the arbitration as binding," the association "filed a petition to confirm the arbitration award." (*Id.* at p. 1187.) The homeowners opposed the petition on the ground that the arbitrator had "exceeded his powers by purporting to render a binding award" even though, according to the homeowners' declarations, they had "never agreed to make the arbitration binding." (*Ibid.*) The association supported its petition with (1) a declaration from the association's lawyer stating that at the arbitration hearing the homeowners agreed to make the arbitration binding, and (2) a letter from the arbitrator to the same effect. (*Ibid.*) The trial court declined to hear oral testimony, treated the arbitrator's letter as dispositive, concluded that the arbitration was binding, and granted the petition. (*Id.* at pp. 1187–1188.)

The Court of Appeal reversed. (*Trabuco, supra,* 96 Cal.App.4th at p. 1188.) The court recognized that by statute there are very few grounds on

which an arbitration award may be vacated and that under *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*), subject to "narrow exceptions, an arbitrator's decision may not be reviewed for factual or legal errors." (*Trabuco, supra,* 96 Cal.App.4th at p. 1189.) But the court reasoned that not *all* types of factual or legal errors warrant the same treatment, so courts must "not abandon all scrutiny of awards." (*Ibid.*) In particular, "[w]hen the issue goes to the integrity of the arbitration process itself, appellate courts have mandated de novo review of an arbitrator's ruling." (*Ibid.*)

"The notion that a party should be bound by an arbitration award and precluded from substantive judicial review is premised on the assumption that the parties have *agreed* to such finality. [Citation.]" (*Trabuco, supra,* 96 Cal.App.4th at p. 1190.) Accordingly, "[t]he binding nature of the arbitration sought to be confirmed is a structural aspect of the arbitration," so "[i]ndependent judicial review of whether an arbitration is binding is necessary to preserve the integrity of the arbitration process and the judicial system." (*Ibid.*) Because the trial court had granted the petition only on the basis of the arbitrator's letter, it had abdicated its function of determining, as a matter of "[i]ndependent judicial review," whether the arbitration was binding. (*Id.* at pp. 1190–1191.) "That was wrong." (*Id.* at p. 1191.) Accordingly, the appellate court reversed and remanded for the trial court to conduct a "careful factual inquiry" to determine whether the parties had in fact agreed that the arbitration would be binding. (*Ibid.*)

*Trabuco* applies straightforwardly here. The arbitrators determined that the parties agreed to binding arbitration. But it is not clear whether a *court* has ever determined that the parties agreed to binding arbitration, and the Goffs contend they did not. Under *Trabuco,* the trial court should have independently reviewed whether the parties had agreed to make the arbitration binding, and, because the relevant facts are undisputed, in the next part of our discussion we conduct that review on this appeal. (Cf. *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [8 Cal.Rptr.3d 517, 82 P.3d 727] [" 'When . . . the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' "].)[2]

---

[2] It is not perfectly clear from the reporter's transcript whether the trial court determined that the parties agreed to binding arbitration or instead relied entirely on the Firm's waiver arguments concerning the arbitrators' offer at the start of the arbitration hearing and the Goffs' failure to request trial de novo within 30 days of service of the award. The record's lack of clarity on that point does not affect our analysis, however, because the relevant facts—the Goffs' initial request for binding arbitration, the Firm's rejection of it, the Firm's later request for binding arbitration, and the Goffs' rejection of it—are undisputed, so if the trial court had independently determined that the parties agreed to binding arbitration, we would still be independently reviewing the trial court's determination. (See *Advanced Micro Devices, Inc. v.*

Any approach other than *Trabuco*'s would mean that, because the arbitrators determined that the parties agreed to binding arbitration, no California court can review that determination, because according to the arbitrators, the parties agreed to be bound by it. That would be precisely the kind of impermissible "bootstrapping" that the arbitration case law warns against. (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1284 [73 Cal.Rptr.3d 395].) Put differently, it would mean that the arbitrators' determination is binding because the parties agreed to be bound by it, and we know the parties agreed to be bound by it because the arbitrators determined that the parties agreed to be bound by it, and that determination is binding because . . . . The way out of that vicious circle is to follow *Trabuco*'s holding that "[i]ndependent judicial review of whether an arbitration is binding is necessary . . . ." (*Trabuco, supra*, 96 Cal.App.4th at p. 1190; cf. *Bruni*, at p. 1291 [parties "cannot be required to arbitrate anything . . . until a court has made a threshold determination that they did, in fact, agree to arbitrate something" (italics omitted)].)

■ The Firm presents several arguments to the contrary, but none is persuasive. First, the Firm argues that the arbitrators' ruling on the issue of bindingness is insulated from judicial review because the Goffs expressly concede in their briefs on appeal that the parties authorized the arbitrators to rule on that issue. The Firm's inference is invalid. Although the issue of bindingness is undisputedly within the *scope* of the issues that the arbitrators were authorized to decide, it does not follow that the arbitrators had authority to *bind* the parties (or, equivalently, to make *unreviewable* rulings) on that issue or any other. *Even in a nonbinding arbitration, the parties are free to authorize the arbitrators to rule on any issue the parties choose, including bindingness or other jurisdictional issues.* That is purely a matter of the scope of the issues to be arbitrated, and the parties can agree to make it as broad or as narrow as they please. But the parties' agreement that bindingness shall be within the scope of the issues on which the arbitrators may rule does not constitute an agreement that the arbitrators' ruling on bindingness (or anything else) shall itself be binding and hence unreviewable. Rather, the parties may agree that the arbitrators' ruling on bindingness (and every other issue within the scope of their authority) shall be nonbinding. That is exactly what the Goffs contend happened here.[3]

---

*Intel Corp., supra*, 9 Cal.4th at p. 376, fn. 9; *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

[3] Thus, by saying that the Goffs concede that the parties authorized the arbitrators to "rule on" or "decide" the issue of bindingness, we do not mean to imply that the Goffs concede that the parties authorized the arbitrators to make a *binding* determination of that issue. On the contrary, the Goffs concede no such thing. Rather, they concede only that the authority conferred on the arbitrators with respect to bindingness was the same authority conferred on the arbitrators with respect to every other issue within the scope of the arbitration—the arbitrators were authorized to rule on or decide (or address or opine on) all of those issues, but,

■ Second, the Firm appears to argue that, because the Goffs concede that the parties authorized the arbitrators to rule on the issue of bindingness, it follows that the arbitrators did not "exceed[] their powers," within the meaning of subdivision (a)(4) of Code of Civil Procedure section 1286.2, by purporting to issue a binding award. The argument lacks merit. Arbitrators in a nonbinding arbitration exceed their powers by purporting to issue a binding award. (*Trabuco, supra,* 96 Cal.App.4th at p. 1189, fn. 8; see also *id.* at p. 1190 ["the arbitrator exceed[s] his powers in a most fundamental way . . . by issuing a binding award after the parties agreed only to nonbinding arbitration"].) Therefore, if a party seeks to vacate (or opposes confirmation of) an arbitration award on the ground that the parties never agreed to make the arbitration binding, then, in order to determine whether the arbitrators exceeded their powers under subdivision (a)(4) of Code of Civil Procedure section 1286.2, the court hearing the petition must independently review whether the parties agreed to be bound.

Third, the Firm attempts to distinguish *Trabuco*. According to the Firm, *Trabuco* holds only that the trial court erred by not "asking the parties for testimony" about whether the arbitration was binding. That is not correct. On the contrary, the *Trabuco* opinion expressly states that "[i]f the trial court had simply decided whether the arbitration was binding based on the declarations of the parties concerning what was said at the arbitration hearing, we might simply affirm the ruling by concluding it was a matter of credibility for the trial court to decide. *But the trial court apparently did not base the ruling on that.*" (*Trabuco, supra,* 96 Cal.App.4th at p. 1190, italics added.) That is, the trial court erred not by basing its decision on written declarations instead of oral testimony, but rather by basing it on something else, namely, the letter from the arbitrator.[4] (*Ibid.* ["In granting the petition to confirm, the trial court expressly noted it was relying on a letter by the arbitrator that said the arbitration was binding. By doing so, the trial court abdicated its function to determine whether the arbitrator exceeded his powers in a most fundamental way: by issuing a binding award after the parties agreed only to nonbinding arbitration."].) In other words, in *Trabuco* the trial court's error was that it did not determine for itself whether the arbitration was binding but instead relied on the arbitrator's determination, expressed in the arbitrator's letter.[5]

according to the Goffs, all of those "rulings" or "decisions" would be nonbinding. Throughout this opinion, we use "rule on," "decide," and similar expressions in this neutral sense, meaning that an arbitrator's "ruling" might or might not be binding, depending on whether the parties agreed to be bound.

[4] Thus, contrary to the Firm's interpretation, *Trabuco* suggests that independent judicial review of whether an arbitration was binding would *not* require the trial court to take live testimony rather than relying on written submissions such as declarations or the arbitration record.

[5] The dissent also attempts to distinguish *Trabuco* on the facts. According to the dissent, "[n]either party in *Trabuco* consented to the arbitrator deciding whether the arbitration was

We conclude that the Firm has failed to present any sound basis for not applying *Trabuco*. Accordingly, we hold, following *Trabuco*, that the arbitrators' determination that the arbitration was binding is subject to independent judicial review.

■ Moreover, the *Trabuco* rule makes sense as a matter of policy. "[T]he Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution . . .' [citations]," and "it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh, supra*, 3 Cal.4th at pp. 9, 11.) As the Supreme Court has explained, "there is a risk that the arbitrator will make a mistake," but the risk "is acceptable for two reasons." (*Id.* at p. 11.) "First, by voluntarily submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Ibid.*) Second, "the Legislature has reduced the risk to the parties of [an erroneous] decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Id.* at p. 12.) Because the statutory framework for judicial review of arbitration awards "substantially reduce[s] the possibility" of various kinds of error, "the residual risk to the parties of an arbitrator's erroneous decision represents an acceptable cost—obtaining the expedience and financial savings that the arbitration process provides—as compared to the judicial process." (*Id.* at p. 13.)

In these ways, the entire system of narrowly circumscribed judicial review of binding arbitration awards is premised on the parties' having *agreed* to it.[6] In effect, the parties agree to forgo their day in court (subject to very limited exceptions) in order to obtain the benefits that arbitration provides. Conversely, if the parties have *not* agreed to binding arbitration, then there is no justification for channeling their dispute into the system of extremely limited judicial review that is applicable to parties who *have* agreed to it.

■ The key question, then, is this: Can a court treat an arbitration award as binding and hence unreviewable *solely on the grounds that the arbitrator both ruled it is binding and had authority to rule on that issue*? The answer

binding" (dis. opn., *post*, at p. 455), but in fact *Trabuco* says nothing about whether ruling on the issue of bindingness was within the scope of the arbitrator's powers. For all we know, the arbitration agreement in *Trabuco* expressly conferred on the arbitrator the power to determine his "jurisdiction," or perhaps to determine "all issues, both substantive and procedural, related to this dispute, including the interpretation of this arbitration agreement." *Trabuco* says nothing to the contrary.

[6] The mandatory character of attorney fee arbitrations under the MFAA does not affect the analysis because only bindingness (which is the basis for limited judicial review) is at issue here, and mandatory fee arbitrations are nonbinding *unless the parties agree in writing to make them binding.* (Bus. & Prof. Code, § 6204, subd. (a).)

must be: No. Unless a court has first determined for itself that the parties agreed to be bound, the court has no basis for treating any part of the arbitrator's award as binding. (See *Bruni v. Didion, supra*, 160 Cal.App.4th at p. 1291 [the parties "cannot be required to arbitrate *anything* . . . until a court has made a threshold determination that they did, in fact, agree to arbitrate *something*"].) In particular, if the award itself states that the parties agreed to make the arbitration binding, then the court must still confront the question: Why should *that* statement in the award be treated as binding? There is no way for the court to answer that question merely by looking to the award itself, because the same question will arise for *every* statement in the award. Moreover, the court cannot answer the question merely by determining that the arbitrator was authorized to rule on the issue, because the arbitrator may have been authorized only to make a *nonbinding* ruling on it. Consequently, the only way for the court to justify treating *anything* in the award as binding is for the court first to determine that the parties actually agreed to be bound. And that yields the *Trabuco* rule: "Independent judicial review of whether an arbitration is binding is necessary . . . ." (*Trabuco, supra*, 96 Cal.App.4th at p. 1190.)[7]

■ The *Trabuco* rule also is fully consistent with various well-established principles in the arbitration case law. For example, "it is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final," so the parties are ordinarily " 'presumed to know that [the arbitrator's] award will be final and conclusive.' " (*Moncharsh, supra*, 3 Cal.4th at pp. 9–10, quoting *Montifiori v. Engels* (1853) 3 Cal. 431, 434.) But that presumption cannot be controlling if the original arbitration agreement (as in *Trabuco*) or the statutes governing the arbitration (as in this case) provide that the arbitration is nonbinding. In *Trabuco*, the parties agreed in writing to nonbinding arbitration, and there was a factual dispute about whether they later orally agreed to make the arbitration binding. In the case before us, the MFAA and rules promulgated under it provide that fee arbitration is nonbinding unless the parties agree to make it binding (see Bus. & Prof. Code, § 6204, subd. (a)), and the parties dispute whether their conduct gave rise to such an agreement. In neither case can a general presumption of bindingness resolve the issue.

---

[7] The dissent claims that by "broadly reading" *Trabuco* we have "created a new rule of law," because "[i]n the absence of fraud, bias, or other extrinsic error, there are no grounds for judicial review for issues the parties consented to submit to an arbitrator." (Dis. opn., *post*, at pp. 455–456.) If the arbitration is nonbinding, however, the arbitrators' rulings on all of the submitted issues are reviewable regardless of the absence of "fraud, bias, or other extrinsic error." Thus, in order to determine whether the arbitrators' rulings are reviewable, a court must determine whether the parties agreed to be bound by them. That is not a new rule of law—it is the holding of *Trabuco*.

■ The *Trabuco* rule is likewise consistent with the principle that parties can agree to authorize the arbitrator to make binding determinations concerning "jurisdiction" or "arbitrability." (*Bruni v. Didion, supra*, 160 Cal.App.4th at p. 1286 [the parties "can agree to arbitrate almost any dispute—even a dispute over whether the underlying dispute is subject to arbitration," although "there is a presumption that they have *not* agreed to this"]; see generally *id.* at pp. 1286–1288 [surveying and synthesizing federal and Cal. case law in this area]; see also *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1439–1443 [111 Cal.Rptr.3d 468].) The arbitration agreement may, for example, authorize the arbitrator to make a binding determination of the scope of the issues that are subject to arbitration. (See, e.g., *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553–557 [21 Cal.Rptr.3d 322].) But again, in the absence of a *judicial* determination that the parties agreed to *binding* arbitration of some issue or other, a court called upon to confirm an arbitration award would have no justification for treating any part of the award as binding.

■ We note that in the case of a civil action in which the defendant moves to compel arbitration on the basis of a predispute contractual arbitration agreement, the necessary judicial determination will ordinarily be made at that initial stage, when the court grants the motion to compel. (See, e.g., *Greenspan v. LADT, LLC, supra*, 185 Cal.App.4th at p. 1425 ["the trial court found 'the parties have entered into a valid agreement to submit [the relevant] disputes . . . to binding arbitration' "].) Moreover, the parties are generally presumed to have intended that the arbitration be binding (*Moncharsh, supra*, 3 Cal.4th at p. 9), and the issue of bindingness often will not even be contested. Instead, the opposition to the motion to compel will often be based on other grounds, such as unconscionability or waiver. (See, e.g., *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 171 [30 Cal.Rptr.3d 76, 113 P.3d 1100].)

■ Such cases are importantly different from cases like this one, which involves an MFAA arbitration. Here, there is no predispute arbitration agreement, but rather a statutory scheme that makes arbitration mandatory for the attorney (or firm) upon the request of the client. (See generally *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 984 [12 Cal.Rptr.3d 287, 88 P.3d 24].) The statutory scheme makes the arbitration nonbinding unless the parties agree in writing to make it binding. (Bus. & Prof. Code, § 6204, subd. (a).) Under these circumstances, if a defendant in a fee collection action requests *nonbinding* arbitration under the MFAA and *never* in any way vacillates from that position, then there is simply no question that everything the arbitrator says or does, every ruling the arbitrator makes, and every statement in the arbitrator's award is *nonbinding*. The client has never agreed to be bound by *anything* in the arbitration.

But the rules of the arbitration might nonetheless authorize the arbitrator to decide on matters of "jurisdiction," which might well include the issue of whether the arbitration is binding. LACBA's Rules for Conduct of Arbitration of Fee Disputes and Other Related Matters (hereafter LACBA Rules) include a provision concerning jurisdiction—rule 11(c) of the LACBA Rules provides that the arbitrators "shall have the authority to determine jurisdiction." If "jurisdiction" includes the issue of whether the arbitration is binding, then the arbitrator in *every* MFAA arbitration conducted through LACBA is authorized to rule on that issue.[8]

What, then, happens if a client unequivocally requests *nonbinding* MFAA arbitration through LACBA and never vacillates, but the LACBA Rules authorize the arbitrator to rule on the issue of whether the arbitration is binding? The answer, however paradoxical it may sound, is straightforward: The client has authorized the arbitrator to make a *nonbinding* ruling on the issue of whether the arbitration is binding, just as the client has authorized the arbitrator to make *nonbinding* rulings on all of the other issues within the scope of the arbitrator's authority.

The scenario we have described is not merely an abstract or theoretical possibility. Rather, we have described *the actual circumstances of every real-world client who requests nonbinding MFAA arbitration through LACBA*—all such clients have agreed to *nonbinding* arbitration under the LACBA Rules, which *authorize* the arbitrators to rule on *jurisdiction*. Therefore, assuming that "jurisdiction" includes the issue of bindingness, all such clients have authorized the arbitrators to make *nonbinding rulings on the issue of bindingness*.

The foregoing analysis reveals the Firm's and the dissent's central argument to be a non sequitur. According to the Firm and the dissent, because the Goffs concede that the arbitrators were authorized to rule on the issue of bindingness, the arbitrators' ruling on that issue is binding and hence not judicially reviewable. That cannot be correct, because the foregoing analysis shows that *authority to rule* on the issue does not always mean *authority to make a binding (and hence unreviewable) ruling* on the issue. The Goffs' concession that the arbitrators were authorized to rule on the issue of bindingness therefore does not defeat their argument that the arbitrators' decision on that issue is subject to judicial review.[9]

---

[8] We express no opinion on whether "jurisdiction" does include the issue of bindingness. Rather, our analysis relies only on the conditional claim that if "jurisdiction" includes the issue of bindingness (which it arguably does), then every arbitrator who has "authority to determine jurisdiction" has authority to rule on the issue of bindingness.

[9] Contrary to the dissent's suggestion, we have not engaged in circular reasoning or assumed the conclusion we seek to prove. We have concluded that the arbitrators' ruling on bindingness

For all of these reasons, we apply *Trabuco* and hold that courts must independently review whether the parties agreed to make the arbitration binding.

## II. The Parties Did Not Agree to Binding Arbitration, and the Arbitrators Therefore Exceeded Their Powers by Purporting to Issue a Binding Award

■ The Goffs. argue that the arbitrators exceeded their powers by purporting to issue a binding award because the undisputed facts establish that the arbitration was nonbinding as a matter of law. We agree.

■ Again, arbitration is a matter of the voluntary agreement of the parties.[10] As the Goffs correctly point out, " '[i]t is hornbook law that an unequivocal rejection by an offeree, communicated to the offeror, terminates the offer.' [Citation.] Once this occurs, the offeree cannot later purport to accept the offer and thereby create an enforceable contract." (*Guzman v. Visalia Community Bank* (1999) 71 Cal.App.4th 1370, 1376 [84 Cal.Rptr.2d 581].)

Thus, when the Firm unequivocally rejected the Goffs' written request for binding arbitration and communicated that rejection to the Goffs, the Goffs' offer was terminated and could not later be accepted by the Firm. Thereafter, when the Firm changed its mind and submitted its own written request for binding arbitration, the Goffs rejected that offer. Accordingly, the parties never entered into a written agreement for binding arbitration, so the arbitration was nonbinding.

■ The Firm's only argument to the contrary is that under rule 39(d) of the LACBA Rules, as well as rule 6.2 of the State Bar Rules of Procedure for Fee Arbitrations and the Enforcement of Awards (hereafter State Bar Rules), if the Firm accepted the Goffs' offer for binding arbitration sometime before the Goffs withdrew it, then the Goffs could not later withdraw it without the Firm's consent. The rules cited by the Firm do not, however, provide any support for the Firm's argument. Rule 39(d) of the LACBA Rules states that

---

is reviewable, and in the next part of our discussion we will conclude that the arbitration was nonbinding, but we never merely assume the truth of either of those conclusions. Rather, our analysis shows that "[i]ndependent judicial review of whether an arbitration is binding is necessary . . ." (*Trabuco, supra*, 96 Cal.App.4th at p. 1190) because the arbitrators' ruling that the arbitration was binding cannot itself justify a court in treating the ruling as binding, even if the arbitrators were authorized to rule on the issue of bindingness. The dissent, in contrast, reasons that, because the arbitrators were undisputedly authorized to rule on the issue of bindingness, their ruling that the arbitration was binding is itself binding and hence insulated from judicial review. Our analysis shows that the dissent's reasoning cannot be correct.

[10] See footnote 6, *ante.*

"[o]nce both parties have agreed to be bound neither party can withdraw from the arbitration process without written consent from the other side." Rule 6.2 of the State Bar Rules states that "[a] party who has requested binding arbitration may withdraw that request and request a change to non-binding arbitration in writing to the program and the other parties, so long as the other parties have not already agreed to binding arbitration." Neither rule says anything about what happens to a request for binding arbitration *that the other party rejects*. Consequently, neither rule provides any support for the Firm's position. The Firm has therefore offered no reason to depart from the hornbook contract law that would otherwise be applicable.[11]

We conclude that the arbitrators' ruling that the arbitration was binding was erroneous as a matter of law and that the arbitrators therefore exceeded their powers by purporting to issue a binding award.[12]

### III. The Firm's Waiver and Forfeiture Arguments Lack Merit

The Firm argues on several grounds, including those adopted by the trial court, that the Goffs waived or forfeited their argument that the arbitrators exceeded their powers by purporting to issue a binding award. We conclude that the Firm's arguments lack merit.

First, the Firm argues that the Goffs have forfeited the point because "at no time during the arbitration proceeding did the Goffs ever challenge or claim that the arbitration panel did not have the authority to decide whether the

---

[11] We note that our conclusion is in accord with the State Bar's arbitration advisory 08-01, which states the following: "If one party chooses binding arbitration when initially submitting the request form but the respondent indicates non-binding on the reply form, the initiator's offer of binding arbitration is considered effectively rejected by the respondent and the matter will proceed as non-binding arbitration. If the respondent subsequently elects binding arbitration and attempts to rely on the requesting party's initial election for binding arbitration, the arbitration will not become binding unless both parties subsequently agree in writing to accept binding arbitration." We do not, however, rely on or defer to arbitration advisory 08-01, which in any event has not been adopted or endorsed by the State Bar's board of governors and does not constitute the State Bar's official position or policy.

[12] The dissent appears to reason that, by acquiescing in the Firm's request to have the arbitrators rule on the issue of bindingness, the Goffs entered into an enforceable agreement to be bound by the arbitrators' ruling on that issue. (Dis. opn., *post*, at p. 453 & fn. 4.) The argument is unsound because, by statute, an arbitration under the MFAA is nonbinding unless the parties agree *in writing* to be bound. (Bus. & Prof. Code, § 6204, subd. (a).) Mere acquiescence or "tacit agreement" (dis. opn., *post*, at p. 453, fn. 4) does not constitute a written agreement to be bound. We also note that insofar as the dissent is relying on the reasoning we have described, the dissent is implicitly applying the same *Trabuco* rule that we are: In order to justify treating the arbitrators' ruling on bindingness (or anything else) as binding and hence unreviewable, the court must first determine whether the parties agreed to be bound.

arbitration was binding or nonbinding." We reject the argument for the reasons already discussed: The Goffs' concession that the arbitrators had authority to rule on the issue of bindingness does not constitute a concession that the arbitrators' ruling on that issue would itself be binding and not subject to judicial review.

Second, the Firm argues that we are bound by the trial court's factual finding that the Goffs turned down the arbitrators' offer to make the arbitration nonbinding in exchange for agreeing to a continuance, so we must also accept the trial court's conclusion that by rejecting that offer the Goffs waived or forfeited their right to nonbinding arbitration. The trial court's factual finding that the Goffs turned down the arbitrators' offer to make the arbitration nonbinding in exchange for agreeing to a continuance is indeed supported by substantial evidence (namely, Green's testimony), and it therefore cannot be disturbed on appeal. (*Crocker National Bank v. City and County of San Francisco, supra*, 49 Cal.3d at p. 888.) But we nonetheless "review independently the trial court's conclusions as to the legal significance of the facts." (*Dorel Industries, Inc. v. Superior Court* (2005) 134 Cal.App.4th 1267, 1273 [36 Cal.Rptr.3d 742]; see also *Crocker National Bank v. City and County of San Francisco, supra*, 49 Cal.3d at p. 888.) The trial court and the Firm's analysis is unsound because, accepting (as we must) the correctness of the trial court's factual findings, as a matter of law the Goffs' rejection of the arbitrators' offer did not constitute a waiver or forfeiture. Before the arbitrators' made the offer, the parties had not agreed to binding arbitration, as our discussion in part II., *ante*, shows. Having never entered into an agreement for binding arbitration, the Goffs had an absolute right to insist on nonbinding arbitration. (See Bus. & Prof. Code, § 6204, subd. (a).) The effect of the arbitrators' offer was to charge the Goffs a fee for exercising that right—the Goffs would have to agree to a continuance if they wanted the arbitration to be nonbinding. The Goffs' refusal to pay that price for the exercise of a right they were entitled to exercise for free does not constitute a waiver or forfeiture of the right, or an assent to its abrogation. On the contrary, the Goffs' rejection of the arbitrators' offer was fully consistent with—indeed, *it was an expression of*—their position that they had an unfettered *right* to nonbinding arbitration and should not have to agree to a continuance or anything else in order to exercise it.

Third, the Firm argues that, assuming the Goffs are right that the arbitration award was nonbinding when made, the Goffs' failure to seek trial de novo within 30 days after service of notice of the award "rendered the nonbinding award binding." We disagree. The Firm's argument is based on

Business and Professions Code section 6203,[13] rule 5.1 of the State Bar Rules, and rule 40 of the LACBA Rules. The statute provides that "[e]ven if the parties to the arbitration have not agreed in writing to be bound, the arbitration award shall become binding upon the passage of 30 days after service of notice of the award, unless a party has, within the 30 days, sought a trial after arbitration pursuant to [Business and Professions Code section] 6204." (Bus. & Prof. Code, § 6203, subd. (b).) Rule 5.1 of the State Bar Rules likewise provides that "[f]ollowing service of a non-binding arbitration award either party may request a trial pursuant to Business and Professions Code section 6204 within 30 days . . . ," and "[i]f a trial after arbitration is not requested, the award automatically becomes binding 30 days after the award is served." And rule 40 of the LACBA Rules similarly provides that, if there is already a court action pending and "all parties have not agreed in writing to be bound [by the arbitration award], the award shall nevertheless become final and binding on the parties, with the same effect as if the parties had originally agreed in writing to be bound, unless, within 30 days after service of the award, a party . . . files a rejection of arbitration award and request[] for trial after arbitration and otherwise complies with Business and Professions Code Section 6204(a)."

We conclude that the statute and rules did not operate in this case to make the award binding. By its terms, the relevant provision of Business and Professions Code section 6203, subdivision (b), applies only "if the parties to the arbitration have not agreed in writing to be bound," and subdivision (a) of Business and Professions Code section 6204 similarly provides that, "[i]n the absence of . . . an agreement" to be bound, the parties "shall be entitled to a trial after arbitration." But the award in this case states on its face that the award is binding because the parties agreed in writing to be bound. Thus, until the award was vacated or corrected on that point, the statutes (and the rules, for similar reasons) did not apply. Moreover, under these circumstances it would make no sense to require the parties to file a request for trial after arbitration unless and until the arbitrators' determination that the award was binding was set aside—before then, any request for trial de novo would be rejected by the trial court, which would consider itself powerless to grant the request with respect to a facially binding award. Because the law does not require an idle act (see, e.g., Civ. Code, § 3532; *Germino v. Hillyer* (2003) 107 Cal.App.4th 951, 955 [132 Cal.Rptr.2d 478]), we conclude that the Legislature did not intend to require a party in the Goffs' position to file a futile

---

[13] The Firm cites Business and Professions Code section 6204, not section 6203, but the latter statute is more directly relevant to the Firm's argument than the former. Business and Professions Code section 6204 provides that in the case of a nonbinding arbitration award a request for trial de novo must be filed within 30 days of service of the award, but the statute does not say what happens to the award in the absence of such a request.

request for trial de novo before obtaining relief from the arbitrators' errone-ous ruling that the award was binding. We therefore hold that in the case of an arbitration award that states on its face that it is binding, the statute and rules on which the Firm relies do not operate to render the award binding if no party requests trial de novo within 30 days of service of the award.[14]

Lastly, the dissent also endorses certain waiver arguments not raised by the Firm, but we find them unpersuasive as well. First, the dissent reasons that because the Goffs did not "contest" the issue of bindingness after the arbitrators ruled that the arbitration was binding, and the Goffs instead "proceeded in the arbitration" when they could have "withdrawn from" it, they waived their objections to the ruling. (Dis. opn., *post*, at p. 459.) We disagree. Before the arbitrators ruled on the issue of bindingness, the Goffs argued, in written submissions to the panel, that the arbitration was nonbind-ing. There is no reason why they needed to present their arguments to the arbitrators *again, after* the arbitrators ruled, in order to preserve the issue for judicial review. The dissent cites no authority to the contrary, and we are aware of none. In general, a party aggrieved by a ruling need not seek reconsideration in order to preserve the issue for later review—advocating an opposing position *before* the ruling is sufficient. And considerations of judicial economy weigh heavily against requiring (or even allowing) a party to present the same argument repeatedly to a decision maker who has already rejected it. (Cf. Code Civ. Proc., § 1008, subd. (a) [providing that motions for reconsideration are permitted only when based on "new or different facts, circumstances, or law"].)

The dissent's inference of waiver from the Goffs' failure to with-draw from the arbitration is likewise unsound. If a party disagrees with an arbitrator's ruling on an issue early in the arbitration, the party need not walk out of the arbitration in order to preserve the issue for later review. The arbitration would presumably continue in the party's absence, and it would make little sense for a party to run such a severe risk of prejudice merely to preserve an argument for later presentation to a court, which might reject the

---

[14] We also note that in the instant case application of the statute and rules in the manner suggested by the Firm would be particularly inequitable. In their timely opposition to the Firm's timely petition and motion to confirm the award, the Goffs argued that the award should be vacated on the ground that it was nonbinding, *and they sought 30 days to request trial de novo once the court declared that the award was nonbinding*. Thus, the Goffs timely notified both the court and the Firm of their intention to exercise their right to trial de novo but also expressed their understanding that they could not exercise that right until the court determined that the award was nonbinding. To hold that under these circumstances the Goffs nonetheless forfeited their right to trial de novo would be a pointless elevation of form over substance. (Cf. *Shiver, McGrane & Martin v. Littell* (1990) 217 Cal.App.3d 1041, 1044–1045 [266 Cal.Rptr. 298] [clients' filing of a malpractice action could not be treated as the "functional equivalent" of a request for trial after arbitration because it did "not necessarily inform [the law firm] that [the clients] intended to challenge the arbitration award"].)

argument on the merits or refuse to consider it on the merits at all. Again, the dissent cites no authority for the exceptionally harsh waiver rule that it applies here, and we are aware of none. (Cf. *United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1582 [283 Cal.Rptr. 8] [when a court enters an order compelling arbitration, the party resisting arbitration " 'does not waive his right to attack the order by proceeding to arbitration; the order is reviewable on appeal from a judgment confirming the award' "], quoting 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 71, p. 95.)

Second, the dissent reasons that it would be unfair "to permit the Goffs to change course at whim" because "the Goffs sometimes treated the award as binding, and at other times as nonbinding, misleading the Firm and the [arbitrators]," and also because "[b]y blowing 'hot and cold' " the Goffs "left the Firm in a state of uncertainty." (Dis. opn., *post*, at pp. 460–461.) We disagree. The only time the Goffs changed course was at the very beginning, when they first insisted on nonbinding arbitration. Before the identities of the arbitrators were known, the Goffs asked for binding arbitration, but the Firm declined and insisted that the arbitration be nonbinding. After the identities of the arbitrators were revealed, the Firm switched its position and wanted binding arbitration. The Goffs, presumably seeing the Firm's change of heart as a red flag, switched their position too and insisted on nonbinding arbitration (which they had every right to do, because the parties had never agreed to make the arbitration binding). Since then, everything the Goffs have done has been consistent with their position that the arbitration was nonbinding. When the Firm asked the arbitrators to decide the issue of bindingness, the Goffs contended that the arbitration was nonbinding. When the arbitrators ruled in favor of the Firm, the Goffs had no choice but to proceed with the arbitration and raise their objections at an appropriate time in court. When the arbitrators offered to make the arbitration nonbinding in exchange for the Goffs' agreement to a continuance, the Goffs' rejection of the offer was fully consistent with their position that they had an unfettered right to nonbinding arbitration and should not have to agree to a continuance or anything else in order to exercise it. The arbitrators issued their award on June 22, 2009, and the Goffs had 100 days from notice of the award to file a petition to vacate. The Firm beat them to it by filing a petition to confirm on July 13, 2009, so the Goffs raised their objections to the award in their timely opposition to the Firm's petition. None of this amounts to changing course at whim, blowing hot and cold, or sometimes treating the arbitration as binding and at other times as nonbinding. On the contrary, ever since their first insistence on nonbinding arbitration (which was occasioned by the Firm's own change of

position), the Goffs have acted consistently, reasonably, and sufficiently expeditiously to preserve and assert their right to nonbinding arbitration.[15]

For all of the foregoing reasons, we conclude that the Firm's waiver and forfeiture arguments lack merit.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter an order vacating the arbitration award, declaring the award to be nonbinding, and granting the Goffs 30 days from service of the order in which to request a trial after arbitration. Appellants shall recover their costs of appeal.

Chaney, J., concurred.

**JOHNSON, J.,** Dissenting.—

### I

The majority asks, "[c]an a court treat an arbitration award as binding and hence unreviewable *solely on the grounds that the arbitrator both ruled it is binding and had authority to rule on that issue*?" (Maj. opn., *ante*, at p. 437.) As this division held in *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413 [111 Cal.Rptr.3d 468] (*Greenspan*), the parties may submit to arbitration issues they were not contractually compelled to submit to arbitration, and the arbitrator's ruling on such issues is not reviewable by any court. Yet, ignoring *Greenspan* and the very limited exclusive statutory grounds for review of Code of Civil Procedure section 1286.2, subdivision (a), the majority holds otherwise.

In their briefs, appellants George and Esther Goff (the Goffs) concede they submitted the question to the arbitrators: "The Goffs do not contend that the

---

[15] The dissent also suggests that our decision is unfair because the Goffs' conduct "put them in a position to contend" the arbitration was binding if they received a favorable award, but "the Firm could not contend that the arbitration was nonbinding because it was the party that actually asked the [arbitrators] to decide the issue." (Dis. opn., *post*, at p. 461.) No such unfairness results from our opinion. After the arbitration, either party was free to contend that the arbitration was binding and to prove it by producing a written agreement to that effect. Similarly, either party was free to contend that the arbitration was nonbinding because the parties never entered into a written agreement to be bound. The Firm's request that the arbitrators decide on the issue of bindingness did not constitute a written agreement to be bound by the arbitrators' ruling on that issue, any more than the Goffs' acquiescence in the Firm's request constituted a written agreement to be bound by the requested ruling. In each instance, the parties' conduct reflected only an agreement concerning the *scope* of the issues within the arbitrators' authority, not an agreement to be *bound* by the arbitrators' ruling on this issue or any other.

panel did not have the authority to make a ruling on the issue of whether the arbitration was binding."[1] (Capitalization & boldface omitted.) The majority asserts that while the arbitrators could decide that question, their decision on this was nonetheless reviewable, and is reviewable as a matter of law in every case. However, pursuant to Code of Civil Procedure section 1286.2, subdivision (a), the grounds for review of an arbitrator's ruling are exclusively limited to causes or events that are extrinsic to the process itself. These include bias; corruption; fraud; misconduct of an arbitrator; lack of a continuance; failure to disclose grounds for disqualification of an arbitrator; the arbitrators exceeded their powers; the arbitrators refused to hear evidence material to the controversy. (Code Civ. Proc., § 1286.2, subd. (a)(1)–(6).) These grants of judicial review are necessary to prevent structural error in the process and to preserve the integrity of the process and protect the rights of the parties to the benefit of their bargain, namely, a fair and neutral arbitration.

However, as here, where the parties have voluntarily submitted the issue to the arbitrator and there is no evidence of factors extrinsic to the process that have corrupted it, the courts have no role in overturning that award. In distinguishing *Greenspan, supra,* 185 Cal.App.4th 1413 and relying on the inapposite precedent of *Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183 [117 Cal.Rptr.2d 842] (*Trabuco*), the majority strains to announce a new rule of law devoid of jurisprudential basis, and which as a result has no utility within the framework of California law. The majority's new rule makes a mockery of the arbitration process, undermines the basic principles of severely limited judicial review of matters parties have agreed to submit to arbitration, and ignores countless decades of California jurisprudence that the rulings of arbitrators are reviewable only in very limited circumstances.

## A.

The determination of the proper standard of review of the panel's decision is key to understanding the limits of our power. In determining whether arbitrators have exceeded their powers, a court must give "substantial deference to the arbitrators' own assessments of their contractual authority . . . ."

---

[1] This concession in the Goffs' reply brief lies at the heart of my view that the arbitration decision is not reviewable. Unlike the majority, I do not think it is proper to relieve the Goffs from a position they have freely taken in this appeal. (See *Mangini v. Aerojet-General Corp.* (1996) 12 Cal.4th 1087, 1097–1098 [51 Cal.Rptr.2d 272, 912 P.2d 1220] [concessions made in brief may be taken as admissions against a party]; see also *Franklin v. Appel* (1992) 8 Cal.App.4th 875, 893, fn. 11 [10 Cal.Rptr.2d 759] ["While briefs and argument are outside the record, they are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party."].)

(*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 373 [36 Cal.Rptr.2d 581, 885 P.2d 994].) However, except where "the parties 'have conferred upon the arbiter the unusual power of determining his own jurisdiction' [citation], the courts retain the ultimate authority to overturn awards as beyond the arbitrator's powers, whether for an unauthorized remedy or decision on an unsubmitted issue." (*Id.* at p. 375.) Thus, in determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, yet we give substantial deference to the arbitrator's own assessment of his contractual authority. (*Id.* at p. 376, fn. 9.) We accept the trial court's findings of fact if substantial evidence supports them, and we must draw every reasonable inference to support the arbitrator's ruling. (*Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1344–1345 [19 Cal.Rptr.2d 215].)

The backbone of arbitration law in California is the concept of contract. Once parties agree to arbitrate an issue, it is insulated from review except in very rare instances where a court will intervene to prevent structural errors in the process. In *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*), our Supreme Court made it clear that the grounds for judicial review of a contractual arbitration award are extremely limited. Under *Moncharsh*, we cannot review the merits of the controversy, the arbitrator's reasoning, or the sufficiency of the evidence supporting the award. (*Id.* at p. 11.) Even "an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Id.* at p. 33.)

Code of Civil Procedure sections 1286.2 and 1286.6 provide the only grounds for challenging an arbitration award. (*Moncharsh, supra,* 3 Cal.4th at p. 33.) Code of Civil Procedure section 1286.2, subdivision (a)(4) provides that an arbitration award may be vacated where the arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision.[2] The rationale is that the arbitrators' powers derive from and are limited by the agreement to arbitrate, and awards in excess of those powers may be corrected by the court. (*Bak v. MCL Financial Group, Inc.* (2009) 170 Cal.App.4th 1118, 1124 [88 Cal.Rptr.3d 800].)

---

[2] The complete grounds for vacation of an award are set forth in Code of Civil Procedure section 1286.2, and include corruption in the arbitrators, procurement of the award by fraud, misconduct of an arbitrator, lack of a continuance, and failure to disclose grounds for disqualification of an arbitrator. Arbitrators exceed their powers by acting *without subject matter* jurisdiction, deciding an issue that was not submitted to arbitration, arbitrarily remaking the contract, upholding an illegal contract, issuing an award that violates a well-defined public policy or a statutory right, fashioning a remedy that is not rationally related to the contract, or selecting a remedy not authorized by law. (Code Civ. Proc, § 1286.2, subd. (a)(4); *Moncharsh, supra,* 3 Cal.4th at pp. 31–33.)

*Moncharsh* explained: "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. Thus, an arbitration decision is final and conclusive *because the parties have agreed that it be so*. By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain." (*Moncharsh, supra,* 3 Cal.4th at p. 10.) Further, because arbitrators are often not bound by the same rules of law and evidence as the trial court, judicial review is of questionable value. "Parties who stipulate in an agreement that controversies that may arise out of it shall be settled by arbitration, may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by an award reached by paths neither marked nor traceable and not subject to judicial review." (*Case v. Alperson* (1960) 181 Cal.App.2d 757, 759 [5 Cal.Rptr. 635].)

In addition, where the parties have contracted to resolve their dispute by arbitration, their agreement contemplates that the arbitrator will have the power to decide any question of historical fact, contract interpretation, or general law, in the arbitrator's understanding of the case, to reach a decision. (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1360–1361 [82 Cal.Rptr.3d 229, 190 P.3d 586] (*Cable Connection*).) " 'Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact . . . .' " (*Ibid.*) Indeed, "[a] contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (*Moncharsh, supra,* 3 Cal.4th at p. 28; accord, *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 676 [108 Cal.Rptr.3d 171, 229 P.3d 83].) To take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority and are reviewable by the courts. In such case, the parties may so deprive the arbitrator of the power to commit legal error. (*Cable Connection, supra,* 44 Cal.4th at p. 1361.)

On the other hand, "the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers. [Citations.] [¶] Giving substantial deference to the arbitrators' own assessments of their contractual authority is consistent with the general rule of arbitral finality . . . ." (*Advanced Micro Devices Inc. v. Intel Corp., supra,* 9 Cal.4th at pp. 372–373.) Thus, "[a]ny doubts about the arbitrator's power to decide . . . issues must be resolved in his favor. [Citation.]" (*Roehl v. Ritchie*

(2007) 147 Cal.App.4th 338, 347–348 [54 Cal.Rptr.3d 185].) In sum, "in the absence of more specific restrictions in the arbitration agreement, the submission or the rules of arbitration, the remedy an arbitrator fashions does not exceed his or her powers if it bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator." (*Advanced Micro Devices*, at p. 367.)

The narrower question of whether the parties here agreed to *binding* arbitration is similarly decided under principles of contract law. There must be a voluntary agreement to arbitrate the dispute (*Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569 [73 Cal.Rptr.3d 17]), and the existence of such an agreement is determined under standard rules of contract interpretation (*Mitchell v. American Fair Credit Assn.* (2002) 99 Cal.App.4th 1345, 1355–1356 [122 Cal.Rptr.2d 193]). An agreement to arbitrate may be implied by conduct, and even in the absence of a party's agreement to arbitrate, a party who voluntarily submits to arbitration and pursues the matter to an award cannot switch course and contend the award exceeds the arbitrator's authority. (*Environmental Barrier Co. v. Slurry Systems, Inc.* (7th Cir. 2008) 540 F.3d 598, 606–607.)

Unless the parties unambiguously provide otherwise, the question of whether they agreed to arbitrate a dispute is to be decided by the court, not the arbitrator. (*Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1199 [78 Cal.Rptr.3d 519, 186 P.3d 1]; Code Civ. Proc., § 1281.2.) However, the parties may confer by agreement such power upon the arbitrator. (*Patchett v. Bergamot Station, Ltd.* (2006) 143 Cal.App.4th 1390, 1392–1393 [49 Cal.Rptr.3d 941]; *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 [154 L.Ed. 491, 123 S.Ct. 588].) If the parties agreed the arbitrator would decide such questions, the court must defer to the arbitrator's decision in that regard. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 946–947 [131 L.Ed.2d 985, 115 S.Ct. 1920].) If, however, the parties did not submit the arbitrability issue to the arbitrator, courts may decide the question de novo in proceedings to vacate the award. (*Ibid.*)

As we previously held in *Greenspan*, the parties may submit to the arbitrator issues they were not contractually compelled to submit, and in such event, we look to the contract and the scope of submissions to determine the arbitrator's authority. (*Greenspan, supra*, 185 Cal.App.4th at p. 1438.) Arbitration submissions are generally broadly construed, and an arbitrator is authorized to determine all questions which he needs to determine in order to resolve the controversy submitted to him, and the arbitrator decides which questions need to be determined. (*Ibid.*) The question of whether the parties have submitted a particular issue to the arbitrator is an issue for judicial

determination *unless* the parties otherwise agree. (*Id.* at p. 1440.) We will not assume the parties agreed to arbitrate unless there is clear and unmistakable evidence they did so. (*Ibid.*)

In determining the scope of the parties' agreement, such agreement may include the rules under which the parties agreed to arbitrate. (*Greenspan, supra,* 185 Cal.App.4th at pp. 1441–1442.) Thus, where the parties' arbitration agreement incorporated American Arbitration Association (AAA) rules, and such rules provided the arbitrator would have the power to rule on his or her jurisdiction, such parties "clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability." (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 [39 Cal.Rptr.3d 437].)

The Mandatory Fee Arbitration Act (MFAA) (Bus. & Prof. Code, § 6200 et seq.), under which the parties arbitrated the dispute here, is a distinct arbitration scheme governing client/attorney fee disputes. In contrast with the California Arbitration Act (CAA), the MFAA has its own rules and limitations. The MFAA is a "closed system" and the arbitration is conducted by a local bar association under the MFAA, not a private alternative dispute resolution service provided in another forum. (*Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034, 1042–1043 [79 Cal.Rptr.2d 567].) The MFAA applies only to disputes concerning legal fees, costs or both and is inapplicable to other claims for affirmative relief. (Bus. & Prof. Code, § 6200, subds. (a), (b)(2).) In contrast, any other type of civil dispute may be resolved by the CAA. (Code Civ. Proc., § 1281.)

As explained in *Aguilar v. Lerner* (2004) 32 Cal.4th 974 [12 Cal.Rptr.3d 287, 88 P.3d 24], "[t]he nature of the obligation to arbitrate under the MFAA differs from that under standard arbitration in two important ways. First, the obligation to arbitrate under the MFAA is based upon a statutory directive and not the parties' agreement. Thus, a client may invoke the MFAA and proceed to arbitration despite the absence of any prior agreement to do so. By contrast, standard arbitration requires that both parties to a dispute agree to arbitrate." (32 Cal.4th at p. 984.) Further, pursuant to the MFAA, arbitration is voluntary for the client but mandatory for an attorney if the client commences the arbitration. (Bus. & Prof. Code, § 6200, subd. (c).) "In other words, whereas a client cannot be forced under the MFAA to arbitrate a dispute concerning legal fees, at the client's election an unwilling attorney can be forced to do so." (*Aguilar,* at p. 984.)

There is no dispute the Goffs consented to the panel's authority to rule on the issue whether the arbitration would be binding. In selecting Los Angeles County Bar Association's (LACBA) Dispute Resolution Services, Inc. (DRS), .

as the forum for the MFAA arbitration—a selection the Goffs had the unilateral right to impose on respondent (the Firm) pursuant to the MFAA— the Goffs consented to be bound by its rules of procedure. These rules of procedure became part of the agreement to arbitrate, and defined the scope of the panel's power. Pursuant to the LACBA Rules for Conduct of Arbitration of Fee Disputes and Other Related Matters, rule 11(c) (LACBA rule 11(c)),[3] the panel had the power to determine its own jurisdiction, and it was pursuant to that power that the panel decided the arbitration would in fact be binding. Thus, because the parties agreed to incorporate this rule into their agreement, there is unmistakable evidence they agreed to submit the binding issue to the panel. (See, e.g., *Patchett v. Bergamot Station, Ltd., supra*, 143 Cal.App.4th at pp. 1396–1397 [trial court properly confirmed arbitration award notwithstanding contention arbitrator exceeded his powers where arbitration clause authorized arbitrator to determine " 'arbitrability of any claim' "].) We must accord great deference to this finding within the scope of the panel's authority.[4]

Thus, to the extent the Goffs argue they never agreed to binding arbitration under principles of basic hornbook contract law, this argument becomes irrelevant where, as here, they consented to the panel's authority on this issue. First, the issue of deciding whether they in fact consented to binding arbitration was submitted to the arbitrators, who applied principles of contract law and the DRS rules in concluding the arbitration would be binding. The panel found the Goffs' original election of binding arbitration was an offer that was accepted by the Firm.

The fact the panel's ruling may have been contrary to hornbook contract law, pursuant to which the Firm's election of nonbinding arbitration had the effect of rejecting the Goffs' initial offer of binding arbitration, does not permit or mandate our interference. We are without the power to review the panel's ruling. As a result, the Goffs' argument is nothing more than an attack on the "arbitrator[s'] reasoning" or, at best, an assertion of an error of law apparent on the face of the award. (*Creative Plastering, Inc. v. Hedley Builders, Inc.* (1993) 19 Cal.App.4th 1662, 1665 [24 Cal.Rptr.2d 216].) Therefore, although the Goffs attempt to characterize the panel's actions as in

---

[3] DRS rule 11(c), provides: "Each sole arbitrator or panel shall have the authority to determine jurisdiction and shall decline to act if it determines that it lacks jurisdiction."

[4] We do not unequivocally assert that the Panel had unilateral authority to determine its own jurisdiction based on the LACBA rules. If the parties here had not requested or acquiesced in such determination, the arbitration would have been nonbinding by default; only because of the Goffs' tacit agreement to the Firm's request, and their failure to withdraw before merit evidence presentation, did the panel have authority to exercise its decisionmaking authority as to whether it would proceed as binding or nonbinding. (See *Environmental Barrier Co. v. Slurry Systems, Inc., supra*, 540 F.3d at pp. 606–607 [party who voluntarily submits to arbitration and pursues the matter to an award cannot switch course and contend the award exceeds the arbitrator's authority].)

excess of its "powers," they are incorrect. There is no question the arbitrators had the power to decide the binding nature of the arbitration, because the parties expressly granted the panel that power.

Nonetheless, the majority relies on *Trabuco* for the proposition that the arbitration award is subject to judicial review because the panel's legally erroneous ruling represents a type of "structural error" going to the integrity of the arbitration process itself. In *Trabuco*, the court stated, "Independent judicial review of whether an arbitration is binding is necessary to preserve the integrity of the arbitration process and the judicial system." (*Trabuco, supra*, 96 Cal.App.4th at p. 1190.) A true statement of the law, but the majority applies *Trabuco* to a factual situation where it simply does not apply.

In *Trabuco*, the defendants owned a home in a subdivision subject to the conditions, covenants and restrictions in favor of the plaintiff homeowners association. A dispute arose over amounts due the homeowners association, and the parties agreed in writing they would submit the dispute to nonbinding arbitration. After the arbitration, the arbitrator issued a " 'Binding Arbitration Award and Decision' " in the homeowners association's favor. (*Trabuco, supra*, 96 Cal.App.4th at p. 1186.)

Approximately two months later, the defendant homeowners attended an association meeting where they took the position the award was nonbinding; the association asserted the award was binding, and a month later, filed a petition to confirm the award. (*Trabuco, supra*, 96 Cal.App.4th at p. 1187.) The petition alleged that the homeowners contacted the arbitrator for clarification, and the arbitrator asked for input from the parties. The association submitted a letter to the arbitrator in which it asserted at the outset of the arbitration the parties agreed to binding arbitration. The defendants did not respond. The arbitrator issued a letter indicating his notes of the arbitration proceedings conformed to the association's view, and that the parties had " 'agreed . . . to seek a final resolution of [the] dispute.' " The arbitrator ruled the proceeding was binding. (*Ibid.*)

In response to the petition, the defendants requested the court to vacate the award on the grounds it was procured by fraud and exceeded the arbitrator's authority. One of the homeowners asserted that although she had " 'expressed [her] desire to put [the] whole ugly dispute behind [her] and . . . would be . . . relieved when the dispute was finally resolved,' " she never agreed to make the arbitration binding. The association replied with the arbitrator's letter, and a declaration from its attorney in which he stated he was present at the arbitration and the defendants agreed to make the arbitration binding. (*Trabuco, supra*, 96 Cal.App.4th at p. 1187.)

At the hearing on the petition, the court did not take any testimony, stating, " '[i]t's done by declaration.' " The defendants pointed out it was a letter, not a declaration, but the court replied that " 'I'm accepting it for what it says to the court, and for you, that he's the arbitrator, and it is binding . . . . [¶] Your client [(defendants)] sat on it. Did nothing. Let the time go by. If it were not binding, and she didn't like the award, she still had her remedies. Didn't do anything.' " The trial court confirmed the award. (*Trabuco, supra,* 96 Cal.App.4th at pp. 1187–1188.)

*Trabuco* held that "although the trial court might properly have found the arbitration was binding, it reached its result by an impermissible means and the case must be reversed and remanded to properly determine whether the [defendants] agreed to binding arbitration." (*Trabuco, supra,* 96 Cal.App.4th at p. 1188.) Because it relied on the letter of the arbitrator, the "trial court abdicated its function to determine whether the arbitrator exceeded his powers in a most fundamental way: by issuing a binding award after the parties agreed only to nonbinding arbitration." (*Id.* at p. 1190.)

Contrary to the majority's reasoning, *Trabuco* does not stand for the proposition that we may correct every error of law in an arbitrator's determination of whether an arbitration is binding. Rather, it stands for the proposition that if an arbitrator exceeds his or her authority (the scope of the parties' contractual agreement) by determining the arbitration was binding, the arbitrator's decision is subject to judicial review. If the arbitrator has exceeded his or her authority in deciding that issue, the error is indeed structural.

*Trabuco* is factually distinguishable from the case before us and illustrates the flaw in the majority's reasoning. Neither party in *Trabuco* consented to the arbitrator deciding whether the arbitration was binding. Rather, the arbitrator unilaterally and without the parties' agreement decided this issue *at the conclusion of the arbitration*. As such, the arbitrator's actions were in excess of the authority conferred upon him by the parties' agreement and was therefore subject to vacation pursuant to Code of Civil Procedure section 1286.2, subdivision (a)(4). Here, the panel's binding/nonbinding decision was part of the arbitral process itself (a premerit decision), consented to by the parties, and thus was not extrinsic to the process. (Code Civ. Proc., § 1286.2, subd. (a).) On the central issue of decision, the facts in this case could not be farther from those in *Trabuco*.

The majority, in broadly reading *Trabuco* for a proposition it did not decide and ignoring the statutory basis of *Trabuco* in Code of Civil Procedure section 1286.2, subdivision (a), has created a new rule of law. In the absence of fraud, bias, or other extrinsic error, there are no grounds for judicial review

for issues the parties consented to submit to an arbitrator. Such is the case here, therefore, we are squarely within the strictures of Code of Civil Procedure section 1286.2, subdivision (a) and *Greenspan, supra*, 185 Cal.App.4th 1413, and easily distinguishable from *Trabuco*.

## B.

Finally, the majority engages in a logical fallacy of circular reasoning. According to the majority although the Goffs submitted the issue to the arbitrators, because the arbitration was nonbinding, the arbitrators could not issue a binding ruling that it was binding. This conclusion diminishes the arbitration process itself. The majority strips the process—as properly defined by the agreement of the parties—of any meaning by concluding an authorized decision nonetheless has no effect. The result is a new rule of law creating a loophole in statutorily defined judicial review of arbitration that is based upon an idle act.

Whether the arbitration was to be binding was precisely the issue to be decided, and in consenting to submit the issue to the arbitrators, the parties ceded the authority to the arbitrators to change the nature of the proceedings, putting this case squarely within *Greenspan, supra*, 185 Cal.App.4th 1413:

(1) The majority finds my conclusion the panel's decision on the issue of whether the arbitration was binding constitutes impermissible bootstrapping because it means that "the arbitrators' determination is binding because the parties agreed to be bound by it, and we know the parties agreed to be bound by it because the arbitrators determined that the parties agreed to be bound by it, and that determination is binding because . . . ." (Maj. opn., *ante*, at p. 435.)

The majority's reasoning illustrates how the majority mischaracterizes *Greenspan*. We do not ascribe cause and effect in the fashion the majority argues; rather, we conclude the parties are bound by the arbitrators' decision on whether they had agreed to binding arbitration not because that was what the arbitrators found after the fact, but because they submitted the issue to the arbitrators in the first instance and before the arbitrators made any finding on the issue. Why have a nonbinding determination that the arbitration is binding or nonbinding when it is already nonbinding? The submission of the issue to the arbitrators would be an idle act.

(2) The majority states, "Although the issue of bindingness is undisputedly within the *scope* of the issues that the arbitrators were authorized to decide, it does not follow that the arbitrators had authority to *bind* the parties (or equivalently, to make *unreviewable* rulings) on that issue or any other.

*Even in a nonbinding arbitration, the parties are free to authorize the arbitrators to rule on any issue the parties choose, including bindingness or other jurisdictional issues. . . .* Rather, the parties may agree that the arbitrators' ruling on bindingness (and every other issue within the scope of their authority) shall be nonbinding." (Maj. opn., *ante*, at p. 435.)

This logical non sequitur violates our prior decision in *Greenspan* because if the arbitration panel had the authority to decide whether the award was binding, then its determination on that issue is not reviewable by a court unless the parties also explicitly and unambiguously agreed that such a ruling could be reviewed for errors of law. (See *Greenspan, supra*, 185 Cal.App.4th at pp. 1436–1443, 1450–1455.)

(3) The majority further states, "Arbitrators in a nonbinding arbitration exceed their powers by purporting to issue a binding award. (*Trabuco, supra*, 96 Cal.App.4th at p. 1189, fn. 8; see also *id.* at p. 1190 ['the arbitrator exceed[s] his powers in a most fundamental way . . . by issuing a binding award after the parties agreed only to nonbinding arbitration'].) Therefore, if a party seeks to vacate (or opposes confirmation of) an arbitration award on the ground that the parties never agreed to make the arbitration binding, then, in order to determine whether the arbitrators exceeded their powers under subdivision (a)(4) of Code of Civil Procedure section 1286.2, the court hearing the petition must independently review whether the parties agreed to be bound." (Maj. opn., *ante*, at p. 436.)

Again, the majority assumes its conclusion: that because the arbitration was nonbinding, the arbitrator's conclusion was reviewable (" 'the arbitrator exceed[s] his powers in a most fundamental way . . . by issuing a binding award after the parties agreed only to nonbinding arbitration' "). But whether the arbitration would be binding was the precise question to be addressed by the panel—whether the parties had agreed to binding or nonbinding arbitration.

(4) The majority continues, "if the parties have *not* agreed to binding arbitration, then there is no justification for channeling their dispute into the system of extremely limited judicial review that is applicable to parties who *have* agreed to it." (Maj. opn., *ante*, at p. 437.)

The majority engages again in faulty reasoning by assuming the conclusion. The predicate of the majority's argument, namely, "if the parties have *not* agreed to binding arbitration," is precisely the issue the parties sought to have decided by the arbitrators. Thus, the conclusion the majority draws from this premise, namely judicial review is appropriate, is not valid. (Maj. opn., *ante*, at p. 437.)

In summary, the majority's attempt to distinguish *Greenspan* is futile. We agree MFAA arbitrations may be nonbinding at the request of a party and do

not involve a predispute arbitration agreement, but rather proceed under a statutory scheme. However, here the parties acquiesced to the arbitrators deciding the issue of whether the arbitration should proceed as binding or nonbinding based upon the sequence of events leading up to the panel's decision in that regard. As *Greenspan* held, the scope of the arbitrator's power derives from the parties' agreement, and may include not only a predispute agreement to arbitrate (or, in the case of an MFAA arbitration, the statutory scheme and LACBA rules) but *any other matters the parties agree to submit to the arbitrator.* (*Greenspan, supra,* 185 Cal.App.4th at p. 1438.) Here, the Goffs do not contest, and the majority concedes, that the arbitrators had the authority to determine whether the arbitration would be binding. As a consequence, this dispute remains squarely within *Greenspan.*

## II.

I would also affirm the trial court's finding the Goffs waived any contention they did not agree to binding arbitration. Waiver is the relinquishment of a known right, but can also refer to "loss of a right as a result of a party's failure to perform an act it is required to perform." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195, fn. 4 [8 Cal.Rptr.3d 517, 82 P.3d 727] (*St. Agnes*).) There is no singular determinative test of waiver, which may be express or implied from conduct that indicates an intent to relinquish the right. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [44 Cal.Rptr.2d 370, 900 P.2d 619].) A party to an arbitration who has knowledge of irregularity in the proceedings cannot sit by and take part in the proceedings and later object on the basis of the irregularity; such party " 'waives any objection on account of such irregularity for he cannot thus take the chance of a favorable [outcome].' " (*Blatt v. Farley* (1990) 226 Cal.App.3d 621, 629 [276 Cal.Rptr. 612].)

"[T]he question of waiver is one of fact, and an appellate court's function is to review a trial court's findings regarding waiver to determine whether these are supported by substantial evidence." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983 [64 Cal.Rptr.2d 843, 938 P.2d 903].) Where, however, the facts are undisputed and there is only one inference which may reasonably be drawn, the question is one of law. (*St. Agnes, supra,* 31 Cal.4th at p. 1196.) The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver. (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946 [118 Cal.Rptr.3d 613]; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211 [69 Cal.Rptr.2d 79].)

The course of this fee dispute demonstrates the Goffs have waived at numerous junctures any right to contest the panel's finding.

First, at the outset of the process, the Goffs did not object to the Firm's request to the panel to determine whether the parties had agreed to binding arbitration, nor did they contest the panel's finding in this regard during the three months between Reuben's December 11, 2008 letter and the commencement of the arbitration on March 25, 2009.[5] Instead, the Goffs proceeded in the arbitration. If the Goffs believed the arbitration should have been nonbinding, they had numerous grounds on which to object. As the clients, they had the right to control the initiation of an MFAA arbitration, which provided them a statutory right to nonbinding arbitration, unless all parties agreed otherwise; and they could have objected to the panel's December 11, 2008 finding on the grounds of LACBA Rules for Conduct of Fee Disputes and Other Related Matters, rule 39(d) and pursuant to State Bar arbitration advisory No. 08-01 and withdrawn from the arbitration. This they did not do. Instead, they continued with the fee arbitration.

Second, after the award was rendered, if the Goffs believed in spite of the panel's ruling the arbitration was nonetheless nonbinding, they should have proceeded to apply, within 30 days after the panel's conclusion, for a trial de novo under LACBA Rules for Conduct of Fee Disputes and Other Related Matters, rule 40. (See also Bus. & Prof. Code, § 6203, subd. (b).)[6] We reject any claim that moving under DRS rule 40 to seek a trial de novo would have been a futile act. Not only would moving promptly to assert their claim have avoided needless time and additional expense, their failure to seek review is evidence of waiver.

The majority asserts that because the award mistakenly purported to be binding, the parties could not have challenged it under Business and Professions Code sections 6203, subdivision (b) and 6204, subdivision (a) because those rules apply to nonbinding awards, and the award stated it was binding; hence, the Goffs would have assumed they were powerless to challenge the award, rendering any attempt to set aside the award or request a trial de novo futile. However, these rules apply "if the parties to the arbitration have not agreed in writing to be bound" and "[i]n the absence of . . . an agreement" to be bound. (Bus. & Prof. Code, §§ 6203, subd. (b),

---

[5] At oral argument, the Goffs' counsel suggested that a letter existed evidencing their objection to a binding arbitration subsequent to the panel's December 11, 2008 ruling; however, on further review, they concede the only letter voicing objection to the arbitration being binding was an October 1, 2008 e-mail excluded by the trial court at the October 2, 2009 hearing.

[6] Business and Professions Code section 6203 of the MFAA provides: "Even if the parties to the arbitration have not agreed in writing to be bound, the arbitration award shall become binding upon the passage of 30 days after service of notice of the award, unless a party has, within the 30 days, sought a trial after arbitration pursuant to Section 6204." (Bus. & Prof. Code, § 6203, subd. (b).)

6204, subd (a).) But that was precisely the Goffs' position (though disingenuous, it appears): they had never agreed to be bound, and were in a similar position as the parties in *Trabuco, supra*, 96 Cal.App.4th 1183, who had never agreed to be bound. As we have discussed, *Trabuco* simply does not apply because the arbitrators here made no post hoc determination that the arbitration was binding.

*Trabuco* does not compel a different result on the issue of waiver by failing to request a trial de novo. *Trabuco* found the defendant homeowners, who had not moved for a trial de novo, had not waived the right to object to the arbitrator's actions in excess of his authority. After noting that parties must raise certain issues at arbitration or waive later review, the court stated: "[O]ne cannot raise an issue about which one is not and cannot be aware. The [homeowners] could not be expected to raise with the arbitrator the arbitrator's after-the-fact characterization of the arbitration as binding." (*Trabuco, supra*, 96 Cal.App.4th at p. 1192.) Here, in contrast, the Goffs cannot claim they were unaware of the right to nonbinding arbitration they initially asserted. On the contrary, there was nothing "after the fact." They did not enter the arbitration believing both parties had agreed to nonbinding arbitration; rather, they were aware the panel had ruled, over the Goffs' assertions to the contrary, the arbitration was binding.

Third, the trial court found the Goffs assented to the arbitration proceeding as binding by their conduct during the arbitration when they turned down the panel's offer to make the arbitration nonbinding in exchange for agreeing to a continuance of the matter. Although under the statute the Goffs had the right to nonbinding arbitration, their conduct up to this point had been consistent that they understood, accepted, and believed the arbitration to be binding. Thus, the arbitrators' request that the Goffs consent to nonbinding arbitration in exchange for proceeding immediately did not extract a concession from them in derogation of their nonbinding arbitration rights. Furthermore, because a finding of waiver (not merely the underlying facts constituting the waiver) is a fact question for the trial court, we will uphold the trial court's determination of waiver if, as it is here, it is supported by substantial evidence. (See *St. Agnes, supra*, 31 Cal.4th at p. 1196.)

Finally, to permit the Goffs to change course at whim would frustrate the Firm's right timely to assert their claim for fees in court, a right they do not have under the MFAA because the right to arbitrate there belongs solely to the client. The client can delay court proceedings to collect fees by selecting arbitration and then repudiating the results of nonbinding arbitration. By blowing "hot and cold" here, the Goffs left the Firm in a state of uncertainty whether it would be able to enforce a binding MFAA arbitration award, or whether the Goffs would proceed by trial de novo after an unsatisfactory

nonbinding award. (See *Burton v. Cruise, supra,* 190 Cal.App.4th at p. 945 [finding waiver of right to arbitrate where party changed strategy about enforcing arbitration agreement at last minute after having resorted to litigation].) Therefore, the Goffs were required to challenge the panel's contrary decision at the earliest opportunity—by treating it as nonbinding and seeking trial de novo within the statutory time limit, instead of waiting until the Firm petitioned the court for confirmation of the award. Here, the Goffs sometimes treated the award as binding, and at other times as nonbinding, misleading the Firm and the panel. The entire arbitration proceeding, the subsequent petition to confirm the award, and three court hearings could have been avoided if the Goffs had raised the issue in a timely fashion.

### III.

In summary, the Goffs never opposed the arbitrators' conclusion the arbitration was binding, and participated in the arbitration knowing it had been ruled to be binding. The unavoidable inference is that if the Goffs had prevailed in the arbitration, their conduct would have put them in a position to contend they had agreed to it being binding. On the other hand, the Firm could not contend that the arbitration was nonbinding because it was the party that actually asked the panel to decide the issue. The Goffs should not be permitted to play the dealer's hand and the gamer's hand as they have done in this case.

I would affirm the judgment of the superior court.

A petition for a rehearing was denied May 6, 2011, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 27, 2011, S193247. Werdegar, J., did not participate therein.